IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EMMETT HODGE, by and through
this guardian ad litem,
MARLO RYAN,

           Plaintiff,

vs.

JO ANNE BARNART,
Commissioner of Social Security,

           Defendants.
_____/

CASE NO. CV-F-04-6007 LJO

**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION (Doc 17)**

      Plaintiff Emmett Hodge, by and through his guardian ad litem, Marlo Ryan ("claimant") seeks judicial review of an administrative decision denying his claim for disability benefits under the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by a December 14, 2004 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

      Claimant filed his complaint on July 26, 2004, and his opening brief on June 16, 2005. The Commissioner filed her opposition to the appeal on August 23, 2005. Claimant filed a reply brief on September 6, 2005.

**Administrative Proceedings**

Claimant, 14 years old on the date of the ALJ's decision, seeks disability benefits due to difficulties in learning and following through and being premature due to mother's drug use. (Administrative Record "AR" 50-63, 77.) Claimant's application was denied initially and on reconsideration. (AR 30-48.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a decision issued on March 13, 2004. (AR 13-19.) The Appeals Council denied review. (AR 5-7.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**Medical History**

The ALJ admitted into evidence claimant's submitted medical records. The pertinent medical and school history is summarized as follows.

Claimant's sixth grade teacher completed a Teacher Questionnaire on April 29, 2002 as to claimant's functioning. (AR 118-125.) In the domain of acquiring and using information, the teacher found claimant had "slight" problems in most areas, but "obvious" problems in reading and comprehending written material, comprehending and doing math, and providing organized oral explanations. (AR 119.) In the domain of attending and completing tasks, the teacher stated that claimant had serious problems with completing work accurately without careless mistakes and working without distraction and at a reasonable pace/finishing on time. (AR 120.) The other 10 tasks were noted to be no problem to "obvious" problem. The teacher noted that claimant is better with hands on active assignments, like emptying the garbage but avoiding homework or other difficult tasks. (AR 120.) In the domain of interacting and relating with other, the teacher noted that only one of the 13 tasks, following rules, was an "obvious" problem. (AR 121.) She noted he "is often off task unless it is something he wants to do." (AR 121.) The domains of "moving about and manipulating objects" and in "caring for himself," the teacher noted no problems. (AR 122-123.)

On June 7, 2002, claimant was seen for a psychological evaluation by Kimball Hawkins, Ph.D. (AR 126.) Dr. Hawkins administered psychological tests. (AR 126.) On the mental status exam, Dr. Hawkins reported that "he is slow to respond to questions and requests and performs very poorly. It was uncertain at times whether or not he was doing his best sometimes." (AR 127.) She reported that he was "frequently nonresponsive and was very difficult to test. He seemed to give wrong answers on

purpose sometimes. He was unable to recite the alphabet." (AR 127.) In the memory test, Dr. Hawkins opined he was malingering. On the Wide Range Achievement test, his scores were "at the beginning elementary level," which caused Dr. Hawkins to opine "he appeared to misspell words on purpose." (AR 127.)

Claimant's seventh grade teacher, Lauren Poon, submitted a Teacher's Questionnaire, after having claimant for 2 months. (AR 135.) She stated that claimant sometimes had problems with finishing what he starts, listening and remaining attentive, concentrating on schoolwork and learning new skills. (AR 135.) She stated that he did not have excessive absenteeism. She stated he did not have problems with hand/eye coordination, using a pen, standing, walking, running, grasping, or being aggressive. (AR 137-138.) She stated he has problems working in a group. (AR 138.) She stated he is eager to help in the classroom. (AR 139.)

Claimant was seen for a psychological evaluation by Akira Suzuki, Ph.D. on October 28, 2002. (AR 142-150.) Dr. Suzuki administered an examination and tests. Dr. Suzuki opined that claimant "continues to present himself to be severely limited," and "presented himself to be much more limited than he actually is." (AR 149.) She opined that his baseline IQ is most likely significantly below average, with a combination of malingering, possible learning disorder and borderline intellectual functioning. (AR 149-150.)

Clinical Psychologist Allan Hedberg, Ph.D. reviewed the record and found that mental retardation, autism and attention deficit disorder with hyperactivity was not supported by the medical evidence. (AR 92.) He said that a mild to moderate learning disability was supported, and that malingering was found on the bases of lower than expected test scores. (AR 92.) Dr. Hedberg noted a conflict in the evidence: between teacher's observations based on a day to day learning environment, in which claimant functions reasonably well but requires assistance, and between external evaluations. Dr. Hedberg stated that claimant does not meet the listings of 112.05, but meets the listing for 112.10 "relative to a learning disability." (AR 93.) He then noted that the "impairments do not fall within the lisiting of 112.10 or 112.05." (AR 93.) The learning disability as of October 13, 2002 was "moderate." (AR 93.) Dr. Hedberg noted that claimant's mother had not complied with prescribed treatments, had not been taking claimant to mental health counseling or supported the school program or speech therapy

program. (AR 94.) Dr. Hedberg's opinion was that "the claimant seems to have been coached to deliberately perform less than optimally in various testing situations. We see obvious lack of honest effort and malingering." (AR 94.)

On January 23, 2004, a teacher reported that claimant was having a hard time concentrating and not talking. (AR 97.) She suggested that he might be helped in a learning disability program. (AR 97.) On January 22, 2004, another teacher reported that claimant was reading a fifth grade book and seems capable when he applies himself. (AR 100.) The teacher reported polite and respectful conduct. (AR 100.)

### Hearing Testimony

Claimant's mother testified at the hearing. She testified that Emmett is a slow learner and his school performance is poor. (AR 173.) She testified that he is in the eighth grade and gets Ds but has never been held back. (AR 174.) He attends regular classes. (Ar 174.) She testified that when she was pregnant with Emmett, she did crack, marijuana and alcohol. (AR 175.) He was born premature. (Ar 175.) He can operate a TV, ride a bike, cannot use scissors, can print his name, can walk and run, does not have friends. (AR 175-176.) He gets along with his brothers and sisters. (AR 176.) When she tells him to do something, she has to show him how to do it and watch that he does it right. (AR 177.) He can take care of his personal hygiene, but she has to check on him. (AR 178.) He does not know to avoid danger, but does not harm himself. (AR 178.) He gets frustrated at school, but his discipline was not a problem, but is a problem now. (AR 179, 185.) He becomes quiet when he does not know what to say or do so he does not "seem like an idiot." (AR 180.) He daydreams a lot. (AR 181.) He knows the difference between right and wrong. (AR 182.)

Emmet Hodge testified. He stated the school he goes to, but did not know how he got to school or where he caught the bus. (AR 188.) He was not sure how many years he had been at the school, but knew he was in the eighth grade. (AR 189.) He testified he was scared. (AR 190.) He testified he plays with friends at recess. (AR 191.) He has trouble reading and math. (AR 191.)

### ALJ Findings

In his March 13, 2004 decision, the Administrative Law Judge ("ALJ") characterized the "primary issue" before him as whether claimant was disabled. (AR 13.) In determining claimant was

not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 23):

1. The claimant, a 14 year old child, has never engaged in substantial gainful activity.
2. The medical evidence establishes that the claimant has learning delays, which constitutes a severe impairment.
3. The medical evidence further establishes that the claimant does not have an impairment or combination of impairments that meets or medically equals the criteria for any listed impairment.
4. The limitations alleged by the claimant and his mother are not credible to the degree alleged. (SSR 96-7p).
5. The evidence establishes the following functional limitations resulting from the combined effect of all of the claimant's impairments and reasonably related symptoms; less than marked limitations in the domain of acquiring and using information; less than marked limitations in the domain of attending and completing tasks; no limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; no limitations in the domain of caring for your self; and no limitations in the domain of health and physical well-being.
6. The claimant's impairments do not functionally equal the listings.
7. The claimant has not been under a "disability" at any time through the date of this decision. 20 CFR 416.924(d)(2).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119,

n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ erred by (1) improperly evaluating the opinion of Allan G. Hedberg, Ph.D., and (2) evaluating his mother's credibility on his subjective complaints.

### **Due Process**

Claimant's opening brief argued a lack of Due Process by the ALJ on the issue of the post-hearing interrogatories provided by the ALJ to consultative psychologist Allan Hedberg, Ph.D., and Dr. Hedberg's responses thereon. The Court requested supplemental briefing on the possible lack of Due Process. On December 13, 2005, the Commissioner filed her supplemental brief. On December 21, 2005, claimant filed his supplemental brief.

Due Process requires that a claimant receive meaningful notice and an opportunity to be heard before his claim for disability benefits may be denied. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The administrative hearing is subject to considerations of due process. *Richardson v. Perales*, 402 U.S. 389, 401-02, 91 S.Ct. 1420, 1427 (1971). The Secretary is mandated by statute to determine disability "on the basis of evidence adduced at the hearing." 42 U.S.C. § 405(b)(1).

Due process requires that a claimant be given the opportunity to cross-examine and subpoena the individuals who submit reports. *Richardson*, 402 U.S. at 402, 91 S.Ct. at 1427. Reliance by the ALJ on a post-hearing report constitutes a violation of due process when the claimant is unable to cross-examine the author of that report. *Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir.1989). The circuit

courts of appeal appear to be split on the issue of whether social security claimants have an absolute right to cross-examine the author of an adverse report. Several have held that the decision to issue a subpoena to cross-examine a consulting physician at a social security hearing is within the sound discretion of the ALJ. *See Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir.1998); *Flatford v. Chater*, 93 F.3d 1296 (6th Cir.1996); *Demenech v. Secretary of Health and Human Servs.*, 913 F.2d 882 (11th Cir.1990); *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir.1983). By contrast, other circuit courts have held that claimants have an absolute right to subpoena witnesses for cross-examination in social security hearings. *Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir.1990), *cert. denied*, 500 U.S. 959, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991); *Coffin v. Sullivan*, 895 F.2d 1206 (8th Cir.1990); *Lonzollo v. Weinberger*, 534 F.2d 712 (7th Cir.1976). The right to subpoena and cross-examine discussed in these cases often depends on whether the report at issue was rendered before or after the hearing, and, if after the hearing, whether the claimant was given notice of the report and a meaningful opportunity to rebut the evidence by means other than cross-examination. A claimant is not entitled to unlimited cross-examination at the disability hearing but rather "such cross-examination as may be required for a full and true disclosure of the facts." *See Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir.1983). The ALJ has discretion to decide when cross-examination is warranted. *Solis*, 719 F.2d at 301 (holding that claimant is entitled to cross-examination where physician is, "crucial witness whose findings substantially contradict the other medical testimony"). *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir.1988) (holding ALJ did not abuse discretion by limiting interrogatories propounded to consulting physician).

If the claimant's attorney fails to object to a posthearing report or remains silent when the opportunity to request cross-examination arises, the right to cross-examination is waived, without regard to whether the ALJ has informed the attorney of the right to cross-examine the author of the report. *Coffin v. Sullivan*, 895 F.2d 1206 (8th Cir. 1990). In *Coffin v. Sullivan*, claimant was twice apprised of the ALJ's decision to commission a vocational report but never replied to either of the ALJ's letters. In the case of reports received after the close of an administrative hearing, a waiver of the right to cross-examine "must be clearly expressed or strongly implied from the circumstances." *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110, 1113 (5th Cir. 1991) (counsel laid foundation for objection to post hearing evidence by objecting to the premises for the report); *Paul v. Celebrezze*,

337 F.2d 352, 354 (9th Cir. 1964) (Social security disability claimant was not denied his right to a fair and impartial hearing on theory significant documents were omitted from claimant's file where administrative record revealed that every opportunity was extended to claimant to object to or supplement the file of his case presented to the hearing examiner), *cert. denied*, 381 U.S. 906 (1965). In *Wallace v. Bowen*, 869 F.2d 187, 193 (3d Cir.1989), the court held "that when an administrative law judge chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose <u>if requested</u>." (emphasis added). Thus, the right to "cross-examine" post hearing evidence may be waived.

Here, the ALJ informed claimant and his representative that the ALJ would be seeking post-hearing evidence. By letter on November 6, 2003, the ALJ informed counsel that it was necessary to obtain evidence from a medical expert and that the ALJ would be submitting interrogatories for that purpose. (AR 91.) The ALJ's letter informed counsel that counsel would receive a copy of the interrogatory responses and that counsel would then have an opportunity to "comment on the responses to the interrogatories, submit more evidence, and ask to submit additional interrogatories to the medical expert or request a supplemental hearing." (AR 91.) Dr. Hedberg's responses to the interrogatories were dated January 12, 2004. (AR 92-95.) By letter dated January 14, 2004, the ALJ informed counsel that he had received Dr. Hedberg's responses and was "forwarding" them to counsel. (AR 96.) The ALJ also informed counsel that he had the option to submit: "written comments concerning the enclosed evidence, a written statement as to the facts and law you believe apply to the case in light of that evidence, and any additional records you wish me to consider (including a report from the treating physician). You may also submit written questions to be sent to the author(s) of the enclosed reports." (AR 96.)

The Record does not disclose that any further inquiry or action was undertaken by claimant as to Dr. Hedberg's responses. Claimant did not seek further examination, clarification of the responses or the interrogatories. Failing to receive a request, the ALJ then issued his decision on March 13, 2004.

Dr. Hedberg's expert's report, which contained an evaluation of claimant's mental functional capacity, was essential to the ALJ's determination.

Following the ALJ's unfavorable decision, claimant then on March 23, 2004 filed an appeal with the Appeals Council. Claimant's stated basis for the appeal, as it pertains to Dr. Hedberg, was that "Dr. Hedberg submitted an opinion subsequent to the hearing wherein he felt that the claimant met listing section 112.10. Claimant contends that he meets listing 112.05." (AR 167-168.) Claimant did not assert a failure of Due Process or insufficient opportunity to challenge the post-hearing evidence of Dr. Hedberg. Thus, the appeal was silent on this issue.

Claimant does not contest that he was afforded the opportunity to submit questions to Dr. Hedberg after the ALJ sent him a letter dated January 16, 2004 providing notice of the additional information he had secured from Dr. Hedberg. Thus, in line with protections afforded by due process, claimant had notice of and an opportunity to respond to Dr. Hedberg's report. Claimant waived that right by not requesting any further procedural protections.

Claimant argues that the Court cannot adequately review the Record, and Dr. Hedberg's opinion, because the questions submitted to the Dr. Hedberg are not included in the Record.

Review of the Secretary's decision is limited to consideration of the record. *Derby v. Bowen*, 636 F.Supp. 803, 806 (E.D.Wash. 1986). The Record must be sufficient to allow the Court to engage in a meaningful review. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) (reversing and remanding in part because the ALJ's "very few findings" and heavy reliance on the conclusions of the vocational expert made it difficult for the court to review the ALJ's decision). The reviewing court must "review the record as a whole" and not " '[isolate] a specific quantum of' " evidence. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir.1991). In evaluating the necessity for a remand, we are guided by "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'." *Brown v. Shalala*, 44 F.3d 931, 935, (quoting *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir.1981)). The Commissioner must make particularized findings to support the administrative decision and allow for meaningful judicial review. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984); *Burnett v. Bowen*, 830 F.2d 731, 736 (7th Cir.1987). As shown below, the Court is able to evaluate whether substantial evidence exists in the Record to support the ALJ's findings and in light of the ALJ's reliance on Dr. Hedberg.

**Evaluation of the Medical Listings**

Plaintiff is a minor child seeking to recover Supplemental Security Income benefits for disability. An individual under the age of eighteen shall be considered disabled if the person has a medically determinable physical or mental impairment which results in marked or severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(I). A physical or mental impairment is defined as an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration has adopted a three-step sequential analysis to determine whether a minor child is disabled. 20 C.F.R. § 416.924(a)- (d); *Smith ex rel. Enge v. Massanari*, 139 F.Supp.2d 1128, 1132 (C.D.Cal. 2001). The first step is to determine whether the child is engaged in any substantial gainful activity. The second step is to decide whether the child has a medically severe impairment or combination of impairments. The third step is to determine whether the child's impairment(s) meet or equal any of the Listing of Impairments contained in Appendix 1 of 20 C.F.R. pt. 404, subpt. P. If the impairment meets or equals one of the Listing of Impairments, then the child is considered disabled. Otherwise, the Commissioner must determine if the limitations caused by the child's impairments are functionally equivalent to one of the listed impairments. 20 C.F.R. § 416.926a.

Claimant's claims relate to the ALJ's adjudication at step three. The Social Security regulations list specific impairments relevant to step three, some of which apply only to children. 20 CFR § 416.924(d); *S.R. ex rel. R.R. v. Barnhart*, 371 F.Supp.2d 796, 799 (W.D.Va. 2005). To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria. See 20 C.F.R. pt. 404, subpt. P, app. 1. "A" criteria are medical findings, and "B" criteria "describe impairment-related functional limitations." *Id.* An impairment that shows some but not all of the criteria, no matter how severely, does not qualify. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995).

Claimant contends the ALJ erred in finding plaintiff's condition did not meet or equal Listing section 112.10. Claimant argues that it was unclear what Dr. Hedberg was opining in that he said both that claimant meets listing 112.10 and did not meet Listing 112.10.

To meet listed impairment § 112.10, the pervasive developmental disorder listing, a claimant must show: (1) qualitative deficits in the development of reciprocal social interaction and in the development of verbal and nonverbal communication and imaginative activity (the "A" criteria); and (2) a marked impairment in at least two appropriate age group criteria, including cognitive/communicative function, social functioning, personal functioning, or difficulties in maintaining concentration, persistence, or pace (the "B" criteria). 20 CFR App. 1, pt. B § 112.10. *S.R. ex rel. R.R. v. Barnhart*, 371 F.Supp.2d 796, 799 (W.D.Va. 2005).

If a child's impairments do not "meet" a listed impairment, they may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. See 20 CFR § 416.926a. A child's impairments "equal" a listed impairment when the child demonstrates a " 'marked' limitation[ ] in two domains of functioning or an 'extreme' limitation in one domain." 20 CFR § 416.926a(a). Domain analysis is equivalent to analysis of the "A" and "B" criteria for listed impairments, and focuses on "broad areas of functioning intended to capture all of what a child can or cannot do." 20 CFR § 416.926a(b)(1). The six domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.

The issue for the Court is whether, in the absence of the Record including the interrogatories asked of Dr. Hedberg, there is substantial evidence to support the ALJ's findings. Here, Dr. Hedberg was a reviewing physician, not examining, who relied upon other evidence contained in the Record. (AR 92: "I have never personally examined or had a personal contact with the claimant or his family.")

Claimant argues Dr. Hedberg found claimant "met" Listing 112.10 and therefore should have been fund disabled. However, Dr. Hedberg also said claimant did not "fall within" Listing 112.10. It is the ALJ's duty to resolve conflicting medical evidence. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.) Dr. Hedberg makes clear that, from his review of the medical records and other evidence, claimant has a "learning disability." Dr. Hedberg noted that the "learning disability was found to be mild to moderate level of severity as of October 13, 2003." Dr. Hedberg relied upon medical evaluations of Dr. Suzuki (AR 142) and Dr. Hawkins (AR

126), teacher evaluations (AR 118), and test scores for grade 7 (AR 87). Claimant does not point to the evidence in the Record which he contends supports the claim he "meets" the listing. Claimant merely relies on the statement of Dr. Hedberg that he "meets" the Listing.

In the decision, the ALJ analyzed the evidence that claimant "equals" the Listing. To "equal" the Listing, claimant must demonstrate "marked" limitations in at least 2 domains of functioning. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). A marked limitation of functioning means "more than moderate" and "less than extreme." 20 C.F.R. § 416.926a(c)(3)(i)( c). "Marked limitation may arise when several activities or functions are limited or even when only one is limited as long as the degree of limitation is such as to interfere seriously with the child's functioning." The ALJ evaluated the evidence for the domains of acquiring and using information and for attending and completing tasks:

> "Emmett is currently in the 8th grade in a regular education context. He has been provided special education by the schools and speech therapy. School attendance was favorable. A recent teacher's report indicated he appeared to be having difficulty paying attention and not talking. Based on his review of the record, Dr. Hedberg concluded the claimant exhibits 'mild' nonexertional limitations such as attention and concentration. The claimant appears to have low average intelligence as mental retardation was not documented.  As of October 2003, school grades and achievement scores place him at a Grade 4 level of functioning.  His achievement scores fall with the percentile levels of 1 percentile in Math. As of January 2004, the claimant was reading a 5th grade book." (AR 17-18.)

This is consistent with the evidence in the Record. Claimant's sixth grade teacher reported that in the domain of "Acquiring and Using Information," claimant mainly had "slight" problems, with "obvious" problems in reading and comprehending written material, comprehending and doing math problems, and providing organized oral explanations and adequate descriptions. She did not note any "serious" or "very serious" problems. She noted that claimant was not currently in special education services and did not display an unusual degree of absenteeism. (AR 118.) She also stated that claimant had poor grades, but was "very willing and desires to try hard." (AR 119.) She also noted that he "always wants to help out in the class room." (AR 119.)

As it pertains to the domain of interacting and relating with others, the ALJ noted that evidence, that:

> "Emmett has friends at school, and is generally polite and respectful. He functions well in a peer related environment, and has a reasonable degree of self-help skills and independent lifestyle." (AR 18.)

Again, this conclusion is supported by the evidence in the Record. Claimant's sixth grade teacher reported that claimant either "[n]o problem" or "slight problem." (AR 121.) Claimant had an "obvious" problem in one aspect of this domain, following rules in the classroom, games, and sports, but described him as pleasant. (AR 121.) Claimant's seventh grade teacher reported claimant participated in group situations and got along well with other children. (AR 138.) He was not aggressive verbally or physically toward peers. (AR 139.)

The ALJ relied upon Dr. Hedberg's opinion and teacher evaluations as it pertains to evidence for the domain of moving about and manipulating objects:

> "Dr. Hedberg found there were 'mild' exertional limitations for the claimant, which related to physical agility, and balance and general physical strength. Emmett has no trouble walking or running. He testified he cannot ride a bike, but according to a Function Report, he can ride a bike, throw a ball, jump rope, use roller skates or roller blades, swim, use scissors, and work video game controls." (AR 18) (evidence citations omitted.)

Claimant's sixth grade teacher did not note any problems in the domain of moving about and manipulating objects. (AR 122-123.) His seventh grade teacher reported that claimant did not have problems with hand/eye coordination, standing, walking, running, grasping, or carrying weights. (AR 138.)

In the domain of caring for self, the ALJ found that the evidence supports that Emmett can "handle his own personal grooming." (AR 19.) This conclusion is supported by both the sixth grade teacher and seventh grade teacher who reported that claimant is able to care for his own needs. (AR 122-123, 138.)

There is not substantial evidence in the record of a "marked" limitation in two domains. Because claimant did not have marked limitations in two broad areas of functioning, or an extreme limitation in one area, the ALJ could find that he did not meet the listing. The Court does not find error.

### Credibility of the Mother

In assessing credibility, the ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.

*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Consistently throughout in the ALJ's decision, it was noted that claimant was viewed as a malingerer who had been coached by his mother. The ALJ referred to "[m]alingering was consistently found and accounts for the conflict in the record." (AR 15.) Dr. Hawkins reported, "Today's testing attempts and observations indicate that Emmett Hodge IV has scores at the lowest possible level on all measures administered and gave wrong answers to questions asked. It is confusing as to how he could get such low scores considering the fact that he is in regular classes currently. It is believed that he may have been malingering. He did not do well on screening measures for malingering today." (AR 127.) In the report of Dr. Suzuki, she states, "Emmett presents with an apparent attempt at presenting himself as much more limited than he actually is." (AR 149-150). In light of the statements in the record of malingering, Dr. Hedberg opined:

> "Unfortunately, the claimant seems to been coached to deliberately perform less than optimally in various testing situations. We see obvious lack of honest effort and malingering in Documents 3F and 6F [Dr. Hawkins' and Dr. Suzuki's reports]. If the claimant comes to believe this erroneous advice and guidance, he will be a disabled child all of his life by virtue of having learned to view himself as disabled. He will be more disabled attitudinally than he will functionally or at his actual skill level. Presumably, the mother has been adversely influential in this negative thinking leading to adverse performance on the part of the claimant when he was professionally evaluated on these two occasions." (AR 94-95.)

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Here, the ALJ considered claimant's medical records, school records and reviewing and consulting records. The ALJ's credibility assessment is entitled to "great weight." *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir.1985). It will not be overturned simply on the basis of "contradictory or ambiguous evidence." *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995).

/////

## CONCLUSION

The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Emmett Hodge, by and through his guardian ad litem, Marlo Ryan.

IT IS SO ORDERED.

**Dated:   February 9, 2006**                     **/s/ Lawrence J. O'Neill**
b9ed48                                              UNITED STATES MAGISTRATE JUDGE